UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Sr. M. Regina Fahy, RSM;
Haliyamtu Theo Amani;
Sarra Ali; Eva Castillo-Turgeon;
and Annagreta Swanson,
    Plaintiffs

    v.                                      Civil No. 05-cv-97-SM
                                               Opinion No. 2006 DNH 124
Commissioner, New Hampshire
Department of Safety,

**O R D E R**

Plaintiffs lawfully reside in New Hampshire, but are not United States citizens.  They brought this action challenging six written and unwritten policies of the New Hampshire Department of Safety, Division of Motor Vehicles ("DMV"), claiming that each unlawfully discriminates against them as non-citizens. Plaintiffs obtained limited success on their claims and now seek an award of approximately $176,000 in attorney's fees, representing roughly 770 hours of work associated with this case. See generally 42 U.S.C. § 1988.  The State objects, at least in part, acknowledging that plaintiffs are entitled to an award of reasonable attorney's fees, but asserting that the amount requested is excessive.

For the reasons set forth below, plaintiffs' motion for attorney's fees is granted in part, and denied in part.

## Background

The primary focus of plaintiffs' petition for declaratory and injunctive relief was their challenge to the DMV's practice of requiring all non-United States citizens who were applying for a new or renewal driver's license to appear at the DMV main office in Concord.  Plaintiffs claimed the DMV's imposition of that requirement on non-citizens, while allowing citizens to process driver's license applications at local DMV satellite offices, amounted to a violation of their constitutionally protected rights of equal protection, due process, and freedom of travel.  Plaintiffs also challenged five other DMV policies, alleging that they too amounted to unconstitutional discrimination against non-citizens.

In a prior order, the court summarized the DMV policies at issue in this case as follows:

> 1.    The regulatory requirement set forth in Saf-C 1002.06(b) which provides that "all non-United States citizens applying for an original or renewal driver license shall appear only at the Division of Motor Vehicles [in] Concord, N.H."

2.    The requirement that all non-citizen
      applicants for an original driver's license
      take a road skills test, even if they are
      surrendering a valid driver's license from
      another state, while similarly situated
      citizens of the United States need only take
      such a test under limited circumstances.
      Saf-C 1003.04(a)(3).

3.    The requirement that, if a non-citizen does
      not hold a driver's license from his or her
      home country, he or she must provide
      documentation from the home country that
      demonstrates either: (a) the applicant has
      never held a driver's license; or (b) that
      the applicant has held a driver's license in
      the United States.  Saf-C 1003.04(c).

4.    The practice of issuing a 45-day paper
      driving permit to non-citizen applicants for
      original driver's licenses, when citizens
      receive a 6-month laminated photo-I.D.
      temporary license.  Saf-C 1003.04(e)

5.    An allegedly unwritten policy of requiring
      non-citizens to renew their driver's licenses
      more frequently than the statutorily required
      five (5) years.

6.    An allegedly unwritten policy imposing on
      non-citizens more onerous requirements
      regarding proof of N.H. residency, even when
      they are merely renewing an existing N.H.
      driver's license.

Fahy v. Commissioner, N.H. Dept. of Safety, 2006 DNH 038 (D.N.H.

March 29, 2006) ("Fahy I").  In that order, the court granted

plaintiffs limited relief.  Specifically, it enjoined the DMV

from enforcing the provisions of Saf-C 1003.04(e), which

authorized it to issue 45-day temporary driving permits to non-citizen applicants for original driver's licenses.

Subsequently, plaintiffs filed a "Motion to Amend Judgment" (document no. 57), in which they complained that, notwithstanding the DMV's adoption of a new policy governing the issuance of driver's licenses to non-citizens, "the DMV persists in tying their driver license expiration to the expiration of their immigration documents." Id. at 4. Without determining whether or not the DMV was actually engaging in any unlawful practices, the court held that "to the extent the issue remains unresolved, it is plain that the New Hampshire Department of Motor Vehicles is not authorized by federal law, state law, or even its own administrative regulations, to issue drivers' licenses that expire in fewer than five years to certain categories of non-citizens, in which plaintiffs are included." Fahy v. Commissioner, N.H. Dept. of Safety, 2006 DNH 074, slip op. at 4 (D.N.H. June 26, 2006) ("Fahy II").

## Discussion

I.   Prevailing Party Status.

That part of 42 U.S.C. § 1988 dealing with awards of attorney's fees provides, in relevant part, that in any action

4

brought pursuant to section 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  Thus, to be entitled to an award of attorney's fees under 42 U.S.C. § 1988, a plaintiff must have "prevailed" on one or more of its federal civil rights claims.  In describing what constitutes a prevailing party, the Supreme Court has embraced a "generous formulation." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989).  That formulation is not, however, without substance.  To be deemed a prevailing party, a plaintiff must have received "at least some relief on the merits of his claim." Hewitt v. Helms, 482 U.S. 755, 760 (1987).  That is to say, the plaintiff "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."  Garland, 489 U.S. at 792.

Moreover, the benefit to the plaintiff must be the product of a "judicially sanctioned change in the legal relationship of the parties."  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources, 532 U.S. 598, 605 (2001).  A plaintiff who claims that his or her suit was the "catalyst" that prompted a defendant to voluntarily alter its behavior is not, without more, a "prevailing party."  Id. at 610.  In other words,

5

to qualify as a prevailing party under section 1988, a plaintiff
must be able to point to an enforceable judgment or court-ordered
consent decree that effected a material alteration of the legal
relationship between the parties.  Id. at 604.  A defendant's
voluntary cessation of challenged conduct, even after suit was
filed, does not, standing alone, bestow prevailing party status
on a plaintiff.

     As an aside, the court notes that this litigation was not
brought as a class action.  Instead, it was brought by five
individuals.  Thus, to constitute prevailing parties, one or more
of those five individuals must demonstrate that he or she
actually benefitted, in a direct and material way, from the
relief granted by this court.

II.  Calculating an Appropriate Fee Award.

     If a plaintiff is properly viewed as a prevailing party, the
next step is to determine the amount, if any, of attorney's fees
to which he or she is entitled.  "The most useful starting point
for determining the amount of a reasonable fee is the number of
hours reasonably expended on the litigation multiplied by a
reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433
(1983).  Importantly, however, the "product of reasonable hours

times a reasonable rate does not end the inquiry."  <u>Id</u>. at 434.

In cases such as this, where a plaintiff has obtained only

limited success, the court must "focus on the significance of the

overall relief obtained by the plaintiff in relation to the hours

reasonably expended on the litigation."  <u>Id</u>. at 435.  As the

Supreme Court observed:

> If . . . a plaintiff has achieved only partial or
> limited success, the product of hours reasonably
> expended on the litigation as a whole times a
> reasonable hourly rate may be an excessive amount.
> This will be true even where the plaintiff's claims
> were interrelated, nonfrivolous, and raised in good
> faith.  Congress has not authorized an award of fees
> whenever it was reasonable for a plaintiff to bring a
> lawsuit or whenever conscientious counsel tried the
> case with devotion and skill.  Again, the most critical
> factor is the degree of success obtained.

<u>Id</u>. at 436.


III. <u>Plaintiffs' Entitlement to Fees</u>.

    Plaintiffs did not prevail with respect to the majority of

the claims advanced in their complaint.  As to their primary

claim — that the DMV could not, consistent with the Constitution,

require non-citizens to appear exclusively in Concord to obtain

initial or renewal driver's licenses — the court ruled in favor

of the State and denied plaintiffs the injunctive and declaratory

relief they sought.  <u>Fahy I</u>, 2006 DNH 038 at 34–38.  Likewise, as

to plaintiffs' claim that the DMV employed an unwritten policy of imposing on non-citizens more onerous requirements regarding proof of New Hampshire residency, the court again ruled in favor of the DMV, concluding that even if the DMV once had such a policy, it was no longer enforcing it.

As to plaintiffs' challenge to the DMV's policy of requiring non-citizens to take a road-skills test even if they are surrendering a valid drivers' license from another state, the court held that plaintiffs lacked standing.  The court reached the same conclusion with regard to plaintiffs' claim that the DMV's policy of requiring non-citizens to provide various documents from their home country violated their constitutional rights.  In both cases, the court concluded that none of the named plaintiffs had been subjected to, or adversely affected by, the challenged policy.

Plaintiffs did, however, obtain some form of judicial relief with respect to two of the six claims advanced in their petition: (1) their challenge to the DMV's issuance to non-citizen applicants for original driver's licenses of a paper, 45-day temporary license, when citizens receive a laminated, 6-month photo-I.D. temporary license; and (2) their challenge to an

allegedly unwritten policy requiring certain categories of non-citizens to renew their driver's licenses more frequently than the statutorily prescribed five-year period.[1]

As to the first of those claims, however, plaintiffs cannot be viewed as "prevailing parties" since each had already obtained an original New Hampshire driver's license well before the court entered judgment in this case.  Thus, while this litigation might well have precipitated the change in DMV policy, the individual plaintiffs did not benefit from that change in any material way.  That is to say, because each plaintiff already held an original New Hampshire driver's license when the court entered judgment in this case, none will ever realize any benefit from the

---

[1]     Parenthetically, the court notes that while the DMV's practice of issuing paper, temporary driving permits to non-citizen applicants for original driver's licenses was plainly unlawful, plaintiffs' claims concerning that practice were, as the DMV points out, probably moot (since none of the named plaintiffs will ever be subjected to that policy again).  At this juncture, however, that point is of little moment.  The DMV has discontinued its practice of issuing the paper driving permits and, even if it had not, a properly constructed class action suit (not subject to the mootness problem) would plainly prevail on a constitutional challenge against that practice.  At a minimum, the point illustrates the problem with bringing individual claims, rather than a class action, when challenging practices that occur only once with respect to any particular individual and, therefore, do not fall within the "capable of repetition, but evading review" doctrine.  See, e.g., Weinstein v. Bradford, 423 U.S. 147, 149 (1975).

elimination of the DMV's former policy of issuing temporary, 45-day, paper driving permits to non-citizen applicants for original driver's licenses.  Moreover, as to the DMV's prior practice of issuing temporary licenses to non-citizens seeking <u>renewal</u> licenses, the DMV voluntarily stopped that practice in April of 2005.  <u>See</u> Affidavit of Nancy Smith, Attachment 4 (document no. 70-7).

As to the second claim on which plaintiffs obtained judicial relief – the DMV's alleged practice of issuing licenses to certain non-citizens that expired in fewer than five years – all plaintiffs claim that they were subjected to that policy and received a renewal driver's license that expired in fewer than five years.  <u>See</u> <u>Fahy I</u>, 2006 DNH 038 at 3-10.  But, the DMV points out that on April 27, 2005, it clarified its pilot program and specifically instructed all DMV employees that if a "permanent resident card has 'indefinite' status, the applicant will be issued a 5 year driver license."  Affidavit of Nancy Smith, Attachment 4 (document no. 70-7).  And, says the DMV, all plaintiffs obtained renewal licenses <u>after</u> the DMV voluntarily changed its policies, but <u>before</u> the court issued its orders in this case.  Consequently, the DMV claims none of the plaintiffs actually benefitted as a result of the court's having ruled in

10

their favor.  According to the DMV, the benefits plaintiffs secured were the result of its having voluntarily changed its policies.

Plaintiffs have not responded to the DMV's assertions. Nevertheless, in their motion to amend judgment, plaintiffs asserted that, despite the DMV's clarification of the pilot program on April 27, 2005, it continued to unlawfully link the expiration date of driver's licenses issued to certain categories of non-citizens to the expiration date of their legal status documents.  Plaintiff's memorandum in support of motion to amend judgment (document no. 57-2) at 4.  Accordingly, the court issued its order dated June 26, 2006, declaring that "to the extent the issue remains unresolved, it is plain that the New Hampshire Department of Motor Vehicles is not authorized by federal law, state law, or even its own administrative regulations, to issue drivers' licenses that expire in fewer than five years to certain categories of non-citizens, in which plaintiffs are included." Fahy II, 2006 DNH 74 at 4 (D.N.H. June 26, 2006).  As to that issue, then, plaintiffs plainly benefitted in a meaningful way from the court's order, thus making them "prevailing parties," for purposes of awarding fees, albeit to a limited extent.

11

IV.  <u>Calculation of a Reasonable Fee Award</u>.

        Having determined that plaintiffs are properly viewed as
prevailing parties with respect to one of the six claims advanced
in their petition, the court must next determine a reasonable
award of fees.  As the Supreme Court has noted, the most critical
factor to consider in arriving at an appropriate fee award is the
degree of success obtained by plaintiffs.  <u>See</u> <u>Hensely</u>, 461 U.S.
at 436.  Considering plaintiffs' success on a claim-by claim
basis, the relief actually awarded them, and the societal
importance of the rights vindicated, <u>see</u> <u>Coutin v. Young &</u>
<u>Rubicam Puerto Rico, Inc.</u>, 124 F.3d 331, 338 (1st Cir. 1997),
plaintiffs' overall success was modest, but noteworthy.
Consequently, they are entitled to a correspondingly modest award
of attorney's fees.  And, since plaintiffs' claims were
substantially inter-related, thereby making it difficult to
segregate out fees generated on claims as to which plaintiffs did
not prevail, application of a strict lodestar fee calculation
would be both inappropriate and unworkable.  <u>See generally</u>,
<u>Andrade v. Jamestown Housing Auth.</u>, 82 F.3d 1179, 1191 (1st Cir.
1996).  <u>See also</u> <u>Pearson v. Fair</u>, 980 F.2d 37, 46 (1st Cir.
1992).

Applying the general principles articulated in the cases cited above, the court concludes that an award of $35,000 in attorney's fees constitutes a fair, equitable, just, and reasonable amount, representing approximately twenty percent of the total amount plaintiffs seek.  See Pearson, 980 F.2d at 46 (awarding fees in an amount representing approximately fifteen percent of the total award sought).  See generally Hensley, 461 U.S. at 436-37 ("There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment.").

## Conclusion

As the court noted in Fahy I, prior to plaintiffs having filed this suit, the DMV:

> was engaged in several practices that were arguably questionable from a constitutional standpoint.  But, to its credit (and perhaps at the urging of plaintiffs' counsel), the State recognized those problems and addressed nearly all of them in ways that both comply with constitutional requirements and protect the security of its citizens by minimizing the opportunity for fraud in connection with the acquisition of New Hampshire driver's licenses.

13

<u>Fahy I</u>, slip op. at 44-45.  Without question, plaintiffs' suit served as a definite "catalyst" in prompting the State to re-examine its policies and, with one exception, to voluntarily amend those policies in a way that is consistent with constitutional and statutory mandates.  For that, plaintiffs and their counsel should be commended.

Unfortunately for plaintiffs, however, the Supreme Court has expressly rejected the so-called catalyst theory when determining fee awards under section 1988.  And, applying the required analysis to the case at hand, the court is constrained to conclude that plaintiffs are entitled to a substantially lower award of fees than the one they seek.  Accordingly, plaintiffs' motion for attorneys' fees (document no. 67) is granted in part and denied in part.  It is granted to the extent that plaintiffs are hereby awarded the sum of $35,000.00 in attorneys' fees, pursuant to 42 U.S.C. § 1988.  In all other respects, it is denied.

      **SO ORDERED.**

                              Steven J. McAuliffe
                              Chief Judge

October 26, 2006

14

cc:  Christine C. Wellington, Esq.
     Stephanie A. Bray, Esq.
     Nancy J. Smith, Esq.